## Skadra *v.* Plains Township, Appellant.

*Negligence — Joint liability—Bridge—City—Borough — Township— Contributory negligence—Act of April 16, 1870, P. L. 1199.*

1. In an action against a city, a borough and a township, in the county of Luzerne, as joint defendants, to recover damages for personal injuries resulting from a fall into a deep excavation made in reconstructing a county bridge at a point where the city, borough and township meet, there can be no joint judgment where the evidence shows that the accident happened at a point wholly within the limits of the borough, and that neither the city nor the township were guilty of any negligence in failing to erect barriers which would have prevented the accident.

2. A municipality is under no obligation to erect a barrier across a sidewalk on the approach of a bridge under reconstruction, where the condition of things on the bridge make it plainly visible to every one that there was no footway open for the public.

Argued March 8, 1910.   Appeal, No. 34, Jan. T., 1910, by defendant, from judgment of C. P. Luzerne Co., Dec. Term, 1906, No. 569, on verdict for plaintiff in case of Joseph Skadra v. Plains Township, Parsons Borough and City of Wilkes-Barre.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries.   Before FERRIS, J.

At the trial the following points were presented:

2. Under all the evidence the verdict of the jury must be for the defendant.   *Answer:* The points presented by the defendants practically call for the taking of the case

away from the jury. We think the case is for you to decide and those points are not affirmed and therefore are not read. [1]

Charles F. McHugh, attorney for Wilkes-Barre city, respectfully requests the court to charge the jury that under all the evidence in the case the verdict should be for the defendant city. *Answer:* The points presented by the defendants practically call for the taking of the case away from the jury. We think the case is for you to decide and those points are not affirmed and therefore are not read. [2]

Verdict and judgment for plaintiff for $1,200. Defendants appealed.

*Error assigned* were (1, 2) above instructions, quoting them.

*D. A. Fell,* with him *A. P. Conniff, W. S. Casterline* and *C. F. Fell,* for appellants.—No joint judgment was possible in this case: Sheridan v. Palmyra Twp., 180 Pa. 439; Boyd v. Ins. Patrol, 113 Pa. 269.

*Andrew Hourigan,* with him *Jas. L. Lenahan,* for appellee.—There is no question but that there was a joint duty of the three municipalities under the statute to keep this bridge in repair. They failed in that duty, and must now answer for that failure and neglect: Pottsville Borough v. Norwegian Twp., 14 Pa. 543; Newlin Twp. v. Davis, 77 Pa. 317.

At best the contributory negligence of the plaintiff was a question for the jury: Schum v. Penna. R. R. Co., 107 Pa. 8; Penna. R. R. Co. v. Coon, 111 Pa. 430.

OPINION BY BEAVER, J., March 3, 1911:

Prior to the year 1905, a stream known as Mill creek, in the county of Luzerne, separated the city of Wilkes-Barre from the township of Plains, the center of the bridge parallel with the said stream being the dividing line be-

tween these two municipalities. During the year 1905, the borough of Parsons was extended, by proceedings in the court of quarter sessions, so as to cover and include a portion of the territory of the township of Plains, extending along Mill creek, the eastern half of the northern side of the bridge over Mill creek, which was theretofore in Plains township, becoming part of the borough. The final decree was made on November 20, 1905. Subsequently to that date, therefore, the southern half of the bridge was in the city of Wilkes-Barre and the northern half had its western end in the township of Plains and its eastern end in the borough of Parsons.

In the year 1904, a number of citizens in Plains township petitioned the grand jury to erect a county bridge over Mill creek under the provisions of the Act of assembly of April 16, 1870, P. L. 1199, entitled, "An act providing the manner in which county bridges shall be built by the County of Luzerne." In pursuance of the proceedings had under this special act of assembly, a county bridge was authorized to be built, and in the year 1905 a contract was awarded by the county of Luzerne to F. A. Snyder for the construction of this bridge, including the filling of the roadway, as appears by the specifications. In the execution of his contract, Snyder made an excavation beginning at the northern abutment of the old bridge and extending northwardly, in which he erected an arched culvert or waterway. The old bridge was allowed to remain, but as we understand the testimony was closed to public travel by substantial barriers in the roadway on both sides, at least to such an extent as to prevent teams from entering thereon. The testimony is conflicting as to whether or not there was any barrier across the sidewalk on the Wilkes-Barre side of the bridge. There were no sidewalks at the other end. Where the excavation for the extension of the bridge was made, there was an abrupt descent from what was the northern abutment of the old bridge, of ten or eleven feet, to the top of the new arch or culvert. At the time of the accident complained of, the masonry or stone-

work of the contractor had been finished, but the approach to the bridge and the new archway or culvert had not been filled up so as to complete the roadway. The contractor, in order to descend from the level of the old bridge to the top of the arch which he had built, had placed planks or boards which rested upon a barrel and a superstructure of boards at the bottom of the excavation. The descent was very steep and, in order to make it possible to use these boards in descending, cleats were nailed across them at convenient distances to prevent persons who used them from slipping.

On July 4, 1906, whilst the extension of the bridge was in this unfinished condition, the plaintiff attempted to cross from the southern to the northern side of the stream, in order to attend a public picnic held there. In making the descent from the top of the old bridge to the top of the arch or culvert which had been erected as the extension on the northern side, he was seriously injured by falling from the boards or planks by which the descent was made, and recovered, in an action of trespass for such injuries, against the city of Wilkes-Barre, the borough of Parsons and the township of Plains, as joint defendants. A verdict of $1,200 was rendered by the jury, upon which a joint judgment was subsequently entered.

From that judgment, this appeal was taken, and the assignments of error are but three: the first, that the defendants' point "Under all the evidence, the verdict of the jury must be for the defendant" was refused; second, "Charles F. McHugh, attorney for Wilkes-Barre City, respectfully requests the court to charge the jury that, under all the evidence in the case, the verdict should be for the defendant city," which was also refused, and the third: "The learned court erred in denying the motion for judgment non obstante veredicto in favor of the defendants."

The questions involved, as stated by the appellants, make clear the points which are raised in the case:

"A. Are the defendants liable for injuries sustained by the plaintiff on a bridge being built by the County, before

the filling of the approaches of the bridge, and its acceptance by the municipalities?

"B. Was the plaintiff guilty of contributory negligence?

"C. Is the city of Wilkes-Barre liable for defects in the highway in Plains Township and Parsons Borough?

"D. Is the city of Wilkes-Barre liable for the negligence of Plains Township and Parsons Borough for their failure to guard an excavation at an approach to the northern end of a bridge where, under an agreement, Wilkes-Barre City maintained the southern end and Parsons Borough and Plains Township the northern end?"

In Sheridan v. Palmyra Twp., 180 Pa. 439, under facts practically similar to those in the present case, except that the separated municipalities there were counties instead of city, borough and township as here, Mr. Justice WILLIAMS delivered the opinion of the court, and, in order to show the similarity of the facts as well as the law which governs them, we cite the entire opinion: "The bridge, by the failure of which the plaintiff lost her husband, was over a stream that had been designated by law as the line between the counties of Wayne and Pike. The road running over it connected the township of Palmyra, Pike county, with the borough of Hawley in Wayne county. A Pier near the middle of the stream was recognized as the boundary between them and each district built and maintained the bridge from its shore to this pier, under an agreement with each other. The accident happened at the Palmyra end of the bridge. The township denies its liability on the ground that the act of June 13, 1836, P. L. 551, sec. 46, provides a mode for building bridges over streams upon the line between two counties, which must be pursued. This is true if the bridge is to be built at the expense of the adjoining counties as a county bridge, but not otherwise. It is competent for the people of the respective townships to build the bridge themselves, and when they divide the bridge at a fixed point, each may build and keep in repair so much of the structure as lies within the township, as any other township road or bridge

is built and repaired.  Where this is done, as in the case before us, each township would be liable for the negligence of its own authorities in the care of its own end of the bridge.  If this was not so, it might be important for every traveler when approaching such a bridge to leave his team and make a journey to the county seat to examine into the legality of the proceedings under which the bridge had been erected, before venturing himself upon it.  The question of negligence was for the jury, and was properly submitted to them, so also was the question of contributory negligence on the part of the deceased.  The case was well tried by the learned judge of the court below, and the judgment is affirmed."

Leaving out of view for the present the question as to whether or not any of the municipalities defendant are liable by reason of the fact that this bridge was being built by an independent contractor, under an agreement with the county of Luzerne, càn a joint judgment against these three municipalities be sustained?

As to the locality in which the accident occurred, there can be no doubt but that it was in the borough of Parsons. It was clearly beyond the center of the bridge, which was the boundary between the city of Wilkes-Barre and the borough of Parsons and township of Plains, and, as the testimony clearly shows, it was at the eastern end of the bridge, which was in the borough of Parsons.

The court left it to the jury to say whether or not there was a rail across the sidewalk in the city of Wilkes-Barre, which prevented persons who were walking from crossing the bridge, and that, if there was none, it was evidence of negligence on the part of the city.  To this, under the circumstances, we cannot agree.  There was an impassable barrier in the roadway which was notice to all concerned that the bridge was not open for public travel.  The plaintiff and all pedestrians, admitting that the lack of a barrier across the footway was an invitation to enter thereon, after crossing the line which divided the city from the borough, came upon a condition of things plainly visible

which was of itself notice that there was no footway open for the public. The plaintiff saw this. He could not fail to see it. There was an abrupt descent of from eight to twelve feet directly in front of him. He saw, also, a makeshift of boards with cleats nailed across them descending at an acute angle which had been erected by the contractor for the use of his workmen. There was neither roadway nor sidewalk for travel, but a deep excavation terminating in and upon a rough archway upon which there was no filling. He assumed the risk of descending by this makeshift, without in any way testing its character. He was precipitated, when stepping upon the second or third cleat, to the masonry of the archway below and sustained a fracture of the neck of the femur, by reason of which in the joining of the fractured bone the one leg was made about one inch shorter than the other.

As to the conduct of the plaintiff at the bridge there is no dispute. We are of opinion, that, confronting a condition which clearly indicated that there was no roadway across the part of the bridge in the course of erection, and assuming the risk of descending by the unusual mode provided by the contractor for his workmen, he was guilty of contributory negligence and was, therefore, not entitled to recover.

We can find nowhere in any of the testimony anything which would convict Plains township of negligence of any kind. It did not contribute in any possible way to this injury. Even if it be admitted that it was their duty to erect barriers so as to prevent persons from pursuing the public road, it appears that barriers across the road had been erected and that there were no sidewalks on that side of the bridge, but even if there had been, the plaintiff did not approach from that side of the bridge, and any failure on the part of the township to erect and maintain such barriers could not in any possible way have contributed to the accident from the results of which he seeks to recover jointly against the three defendant municipalities.

In Magee v. Railroad Co., 13 Pa. Superior Ct. 187, we held that "In general, where two or more persons act independently in producing an injury, they are not jointly liable for the combined results of their act, and the fact that it is difficult to determine the relative proportion of injury caused by each is not a sufficient reason for holding them jointly liable." President Judge RICE, who wrote the opinion in this case, says: "The principle is well illustrated in Little Schuylkill Nav. R. R. & C. Co. v. Richards, 57 Pa. 142. Suit was brought for damages to a dam filled by deposits of coal dirt from different mines on the stream, some of which were worked by the defendants and their tenants, and some by persons not connected with the defendants. It was held that the defendants were not liable for the whole damage caused by the deposits, nor for the acts of their tenants so far as these were done without their sanction. Mr. Justice AGNEW said: 'Without concert of action, no joint suit could be brought against the owners of all the collieries, and clearly this must be the test.' This principle has been recognized in many similar cases in Pennsylvania, amongst which may be mentioned, Seely v. Alden, 61 Pa. 302; Little Schuylkill Nav. R. R. & C. Co. v. French, 81* Pa. 366; Gallagher v. Kemmerer, 144 Pa. 509. It has also been recognized and applied in cases brought to recover damages for the pollution of a stream by sewage discharged into it by different riparian owners: Chipman v. Palmer, 77 N. Y. 51; Sellick v. Hall, 47 Conn. 260. In the New York case, MILLER, J., said: 'The right of action arises from the discharge into the stream, and the nuisance is only a consequence of the act. The liability commences with the act of the defendant upon his own premises, and this act was separate and independent of and without any regard to the act of others. The defendants' act, being several when it was committed, cannot be made joint because of the consequence which followed in connection with others who had done the same or a similar act.' See further Weakly v. Royer, 3 Watts, 460; Bard v. Yohn, 26 Pa. 482; Simpson v. Seavey, 8 Maine, 138;

and Gould on Waters, sec. 222 (3d ed.). We think the principle applicable here. If there were any evidence that the drain was constructed as a common drain or sewer, or that the turnpike company either expressly or impliedly assented to the use that Shibe made of it, the case would be different. But, in view of the undisputed facts to which we have alluded at the outset of the discussion of this branch of the case, it is impossible to see how the turnpike company can be held liable for the pollution of the plaintiff's well resulting from the independent act of Shibe in turning his kitchen sewage into the drain." In this case a joint judgment against the defendants was reversed.

We are clearly of the opinion, therefore, independently of what we have said in regard to the question of contributory negligence, upon which we do not rest the judgment in this case exclusively, that a joint judgment against the three defendants here cannot be maintained, first, because there was no evidence whatever of any independent negligence on the part of Plains township and Parsons borough which contributed to the accident, second, there was no joint obligation on their part to maintain a barrier across the sidewalk on the part and within the limits of the city of Wilkes-Barre, even if there was such an obligation on the part of the city, and, third, a joint judgment cannot in any event be sustained.

The assignments of error are, therefore, sustained.

Judgment reversed.